## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOHANN ALEXANDER BASS**,

        Plaintiff,

   v.

**FEDERAL MOTOR CARRIER SAFETY
ADMINISTRATION**,

        Defendant.

Case No. 24-cv-1874 (CRC)

## <u>MEMORANDUM OPINION</u>

The Federal Motor Carrier Safety Administration ("FMCSA") within the U.S.

Department of Transportation ("DOT") operates the Drug & Alcohol Clearinghouse, a national

online database that contains drug and alcohol testing records for commercial motor vehicle

drivers. *Pro se* plaintiff Johann Alexander Bass, a licensed truck driver, filed suit under the

Administrative Procedure Act ("APA") seeking to correct an alleged error on his Clearinghouse

profile. FMCSA now moves to dismiss Bass's complaint for lack of subject-matter jurisdiction

and for failure to state a claim.

Although the issues in this case might first appear to be standard administrative law fare,

there is more to them than meets the eye. As explained below, the Court finds that it has subject-

matter jurisdiction. But after parsing the relevant DOT regulations and considering whether the

APA provides a pathway to the relief Bass seeks, it concludes that Bass has sued under the

wrong statute. The Court will therefore grant the agency's motion to dismiss for failure to state a

claim. That said, Bass indicates that he appealed FMCSA's denial of an administrative request

to change his Clearinghouse record over two years ago and has yet to receive a final decision. If

that is so, the Court encourages the agency to act on Bass's request with due haste.

## I.    Background

Mr. Bass is a licensed commercial long-haul truck driver.  Complaint ("Compl.") ¶¶ 2, 5.

In August 2021, he found himself in Illinois looking for jobs.  Id. ¶ 5.  One day, Bass received a

call from a representative of LTi Trucking Inc., offering him an interview if he could get down to

St. Louis, where the company's office was located.  Id.  Bass jumped on a train that evening.  Id.

¶ 6.  The next morning, the LTi representative instructed him to make his way to a collection

site, where he would take a drug test via urine sample, id. ¶¶ 6–7, in accordance with FMCSA's

mandatory pre-employment testing regulations, see 49 C.F.R. § 382.301.

Bass insists he provided a clean sample, but the sample was rejected by the collector.  See

Compl. ¶¶ 7–8.  According to the complaint, the collector informed Bass that his specimen

contained "[n]itrates" and that "humans do not have nitrates in their urine," id. ¶ 7; per the record

from Bass's Clearinghouse profile, which Bass filed with his surreply,[1] the collector noted that

Bass had "provided a bright yellow urine specimen, that did not have a urine smell," Pl.'s

Surreply, ECF No. 21, Ex. 1 at 1 (citation modified).  Whatever the exact nature of the

collector's concern about the first specimen, she informed Bass that he would need to provide a

second sample.  Compl. ¶ 8.  In Bass's telling, he agreed to do so, but after a few minutes of

waiting in the lobby at the collection site, asked to go to the store across the street.  Id.  Bass

---

[1] Bass has filed a surreply to the government's reply brief.  Neither the Federal Rules of Civil Procedure nor this Court's Local Civil Rules afford a litigant the automatic right to file a surreply.  And Bass never sought the Court's leave to file an additional brief, though his filing indicates he received opposing counsel's consent to do so.  Pl.'s Surreply at 1.  Because Bass is proceeding *pro se*, however, the Court will consider the filing.  Cf. Brown v. Whole Foods Market Group, Inc., 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss." (citation omitted)).  In addition, the Court will consider the exhibit that Bass has appended to his surreply.  See infra at 5–6 (explaining the kinds of documents that courts may consider without converting a motion to dismiss into a motion for summary judgment).

recounts that he "was told that he could [leave] but had to provide another sample within three hours." Id. Yet "[w]ithin minutes" of leaving for the store, Bass says, he "received a call telling him that he had been deemed to have refused" the second drug test. Id.

Under governing FMCSA regulations, if an employee leaves the collection site before a drug testing process is complete or declines to take an additional test the collector has directed him to take, such conduct may constitute a refusal to test. See 49 C.F.R. §§ 40.191(a)(2), (a)(6); 40.261(a)(2). The day after the mishap at the collection site, LTi Trucking recorded Bass's apparent "[d]rug test refusal" on his Clearinghouse profile. Compl. ¶ 9; see also Pl.'s Surreply, ECF No. 21, Ex. 1 at 1.

Nearly two years passed. In June 2023, after doing his own "research[]" on the matter, Bass decided to challenge the violation LTi had logged on the database, filing a "Petition to Remove Information from Clearinghouse" ("Petition") with the FMCSA pursuant to 49 C.F.R. § 382.717(a). Compl. ¶ 12; see also id., Ex. 1 at 3. That section of the Code of Federal Regulations outlines a procedure by which drivers can petition to correct administrative errors in the Clearinghouse system. Although petitioners may generally "not contest the accuracy of test results, test refusals, or other violation information, under th[at] section," there are a few exceptions, including one that Bass invoked in his 2023 Petition: "Petitioners may request that FMCSA remove from the Clearinghouse an employer's report of a violation under 49 CFR 40.261(a)(1) or 40.191(a)(1) if that report does not comply with the reporting requirements in § 382.705(b)(3)." 49 C.F.R. § 382.717(a)(2)(iii).

Bass and FMCSA agree that his initial Petition was denied, though they do not elaborate on the precise form, content, or timing of the denial. See Compl. ¶ 13 (explaining that Bass's Petition "was summarily denied"); Def.'s Mot. to Dismiss at 6 (noting that Bass's Petition "was

3

denied"). Roughly a month after filing his Petition, Bass filed a "Request for Administrative Review," to which the agency has allegedly yet to respond. Bass posits that the FMCSA's failure to respond within 30 days constitutes a "constructive denial" of his correction request and qualifies as final agency action. Compl. ¶ 13.

In June 2024, Bass filed a complaint[2] in this Court, alleging that the agency's actions violated the APA and seeking an order directing FMCSA to remove the violation from his Clearinghouse profile. The complaint lists myriad reasons why Bass believes the removal is warranted. For instance, he insists that the collector did not process his first urine sample correctly and should not have summarily concluded that his sample was bogus; that he was granted permission to temporarily leave the testing site; that LTi was not authorized to record the violation because it had not yet offered him a contingent offer of employment; and that neither LTi nor the FMCSA offered him notice of or proper documentation to substantiate the violation that was logged in the database. See generally Compl. ¶¶ 16–26.

FMCSA moves to dismiss Bass's complaint on three grounds. First, under the Hobbs Administrative Orders Review Act, 28 U.S.C. § 2341 et seq., exclusive jurisdiction over this case vests in the courts of appeals, so the district court lacks jurisdiction to entertain Bass's claim. Second, Bass failed to exhaust his administrative remedies. And third, he has failed to state a claim under the APA and the FMCSA regulations that he cites. With the briefing process complete, the motion is now ripe for adjudication.

---

[2] Bass points out that his initial pleading is captioned "Petition," not "Complaint." See Pl.'s Opp'n to Mot. to Dismiss at 2, nn.2–3. Regardless of what he labels the pleading, the Court has and will continue to construe it as the operative complaint in this case.

## II.    Legal Standards

FMCSA moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of

Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of

America, 511 U.S. 375, 377 (1994). To survive dismissal under Rule 12(b)(1), a plaintiff "bears

the burden of demonstrating" that the Court possesses subject-matter jurisdiction over the case.

Shuler v. United States, 531 F.3d 930, 932 (D.C. Cir. 2008). "On a motion to dismiss under Rule

12(b)(1) for lack of subject[-]matter jurisdiction, the nonmoving party is entitled to all reasonable

inferences." Daniels v. Union Pacific R. Co., 480 F. Supp. 2d 191, 194 (D.D.C. 2007).

However, the Court may consider documents outside the pleadings to assure itself that it has

jurisdiction, without converting the motion into one for summary judgment. See Haase v.

Sessions, 835 F.2d 902, 905–06 (D.C. Cir. 1987); Artis v. Greenspan, 223 F. Supp. 2d 149, 152

(D.D.C. 2002). And "[d]espite the favorable inferences that a plaintiff receives on a motion to

dismiss, it remains the plaintiff's burden to prove subject-matter jurisdiction by a preponderance

of the evidence." Henry v. Azar, 518 F. Supp. 3d 520, 525 (D.D.C. 2021).

As for a challenge under Rule 12(b)(6), a complaint must "contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is facially plausible when the pleaded factual content "allows the court to draw the

reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at

556). Further, the complaint must offer more than "labels and conclusions." Id. (quoting Twombly, 550 U.S. at 555).

In assessing a 12(b)(6) challenge, the Court may ordinarily consider the "facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave–Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). Said a slightly different way, "where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment." Solomon v. Off. of Architect of the Capitol, 539 F. Supp. 2d 347, 349–50 (D.D.C. 2008) (quoting Vanover v. Hantman, 77 F. Supp. 2d 91, 98 (D.D.C. 1999)).

Finally, a few words on judicial review of a *pro se* complaint. First, the complaint must be "liberally construed" and, "however inartfully pleaded, . . . held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Further, in assessing the sufficiency of a *pro se* complaint, the Court may "consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged." Wade v. U.S. Secret Serv., 525 F. Supp. 2d 1, 9 (D.D.C. 2007) (quoting Greenhill v. Spellings, 482 F.3d 569, 572 (D.C. Cir. 1998)). Courts are also to read "all of a [*pro se*] plaintiff's filings together" in deciding whether his complaint should be dismissed. Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999).

### III.     Analysis

A.  Hobbs Act Jurisdiction

FMCSA first contends that the Hobbs Administrative Orders Review Act, commonly

known as the Hobbs Act, divests this Court of jurisdiction over Bass's APA claim.[3]  The Hobbs

Act provides that the courts of appeals have "exclusive jurisdiction to enjoin, set aside, suspend

(in whole or in part), or to determine the validity of," among other things, "all rules, regulations,

or final orders" of the Secretary of Transportation, issued pursuant to various DOT-implemented

statutes.  28 U.S.C. § 2342(3)(A).  In other words, a district court lacks the power to review any

rule, regulation, or "final order" that DOT promulgates under the authority of the statutes listed

in the Hobbs Act.

There is no question that if FMCSA's action qualified as a rule, regulation, or "final

order," it would fall within the scope of the Hobbs Act and shunt this case to the court of

appeals, as the statutory authority establishing and governing FMCSA's Clearinghouse, see 49

---

[3] This Hobbs Act is not to be confused with the homonymous and better-known federal robbery/extortion statute.  Curious readers might be interested to know that both Acts were sponsored by Samuel Francis Hobbs, an eight-term Democratic congressman who served Alabama's Fourth District from 1935 to 1951.  Hobbs hailed from Selma (where the undersigned happens to have spent many summers and holidays visiting the home of his maternal grandparents).  The congressman was a supporter of President Franklin D. Roosevelt and took office by defeating an avowed white-supremacist incumbent.  Alongside the entire Alabama congressional delegation, however, he supported Jim Crow and opposed civil rights legislation.  A lawyer, Hobbs is perhaps most known for his close ties with J. Edgar Hoover and the Federal Bureau of Investigation, which led to his sponsorship of the criminal Hobbs Act in 1946.  His connection to the more esoteric administrative Hobbs Act seems to have been a tad less personal.  See generally Jason N. Sigalos, The Other Hobbs Act: An Old Leviathan in the Modern Administrative State, 54 Georgia L. Rev. 1095, 1102–14 (2020).  Hobbs also left his mark on Washington, D.C. by convincing Treasury Secretary Henry Morganthau to add marble to the list of building materials for federal public works projects.  As a result, Alabama marble adorns the U.S. Supreme Court Building, the Library of Congress, the Federal Reserve Building, and the National Gallery of Art.  See Samuel Francis Hobbs, Encyclopedia of Alabama, https://encyclopediaofalabama.org/article/samuel-francis-hobbs/ (last accessed Dec. 22, 2025).

U.S.C. § 31306a, falls explicitly within the ambit of Section 3(A) of the Hobbs Act. Neither party suggests that Bass is challenging an FMCSA rule or regulation. So the sole remaining question, for Hobbs Act purposes, is whether the agency's non-response to Bass's Request for Administrative Review qualifies as a "final order" within the meaning of the statute.

To answer this question, the Court looks to <u>Weaver v. Federal Motor Carrier Safety Admin.</u>, a case cited by Bass and not meaningfully distinguished by the government. 744 F.3d 142 (D.C. Cir. 2014). There, a plaintiff truck driver alleged that FMCSA erred in declining to remove a traffic citation from his driving record in the agency's Motor Carrier Management Information System, a database documenting commercial truck drivers' driving and traffic infractions. <u>Id.</u> at 143–44. In considering the nature of the agency action that the plaintiff challenged, the D.C. Circuit explained that a "final order" under the Hobbs Act is "not . . . equivalent in all respects" to a "final agency action" under the APA. <u>Id.</u> at 146. The structure of the statute suggested as much: "One subsection vests the courts of appeals with jurisdiction over 'all final agency actions,' § 2342(7), whereas the provision here, § 2342(3), covers 'rules, regulations, or final orders.'" <u>Id.</u> The Court found these textual distinctions to be significant, as they signaled the existence of some agency "actions" that "are *not* rules, regulations or final orders, i.e., a residue of agency activity subject to initial review in the district court." <u>Id.</u>

The <u>Weaver</u> court went on to hold that FMCSA's refusal to "make a correction to which Weaver sa[id] he [wa]s statutorily entitled" qualified as a "form of agency action," but not a "final order." <u>Id.</u> at 146–47. The Circuit reasoned that the agency's "alleged failure to carry out its statutory duty" did not seem to be the end result of an "adjudication," which the APA defines as "agency process for the formulation of an order." <u>Id.</u> at 147 (quoting 5 U.S.C. § 551(7)). And

the lack of an evidentiary record suitable for judicial review also suggested to the Circuit that it should treat the agency's (in)action as "something other than a . . . final order."  Id.

Weaver is on-point and controlling—as is Silverado Stages, Inc. v. Federal Motor Carrier Safety Admin., another D.C. Circuit decision holding that, under Weaver's logic, a charter bus service's challenge to FMCSA's refusal to remove a safety violation from yet a different regulatory system had to be "brought initially before the District Court."  809 F.3d 1268, 1274 (D.C. Cir. 2016).  Like the plaintiffs in Weaver and Silverado, Bass contests the FMCSA's failure to remove a violation from one of the agency's safety databases.  Based on the allegations in the complaint, FMCSA has done even less to respond to Bass's correction request than it did in response to Weaver's or Silverado's.  Aside from Bass's allegation that his initial Petition was "summarily denied," Compl. ¶ 13, there is no indication of a formal agency determination with findings or explanations.  And Bass apparently has not received any response at all to his Request for Administrative Review pursuant to 49 C.F.R. § 382.717(f)(1), despite the 30-day deadline that he maintains applies to such a request.  Given the similarities between Weaver, Silverado, and this case, the Court concludes that FMCSA's refusal to "make a correction to which [Bass] says he is statutorily entitled" is a "form of agency action" (or inaction, to be precise), but not a "final order" under the Hobbs Act.  Weaver, 744 F.3d at 146–47.

The government characterizes Weaver as "inapposite," but its effort to distinguish the case falls seriously flat.  Def.'s Reply at 2.  It is true, as FMCSA notes, that both parties in Weaver agreed that the court of appeals lacked Hobbs Act jurisdiction over the driver's claim, but their concurrence on that point did not stop the Circuit from opining on the nature of the agency action in question or the meaning of "final order" in the Hobbs Act context.  In addition, the government's attempt to differentiate Weaver from this case on the basis of the precise

statutory provision under which FMCSA has acted (or failed to act), <u>see id.</u>, is pedantic at best. As noted above, the challenges in the two cases are very similar in nature, despite the different statutory provisions and regulations at issue. The government thus offers no compelling reason for the Court to diverge from <u>Weaver</u> and <u>Silverado</u>.

Because the Hobbs Act does not cover the FMCSA's action here, the agency's first proffered ground for dismissal—lack of subject-matter jurisdiction—falls away.

B.   <u>Failure to State a Claim & Administrative Exhaustion</u>

FMCSA next raises Bass's failure to exhaust available administrative remedies and his failure to state a claim upon which relief can be granted as additional bases for dismissal. The Court agrees with FMCSA that the APA claim must be dismissed, but, for reasons that will become clear, addresses the points in reverse order.

1. *Failure to State an APA Claim*

Let's start, as usual, at the very beginning—although doing so here presents some uncertainties. Bass challenges the FMCSA's failure to remove his violation under the APA, but the precise nature of his claim is somewhat unclear. Does he mean to "compel agency action unlawfully withheld or unreasonably delayed"? 5 U.S.C. § 706(1). Or does he instead seek to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"? <u>Id.</u> § 706(2). The complaint does not reference a specific subsection of § 706. Construing the *pro se* complaint as liberally as is permissible, the Court understands Bass to raise the latter kind of challenge. The complaint interprets FMCSA's non-response as a "constructive denial" of his correction request. Compl. ¶ 13. And in terms of relief, Bass does not seek an order directing FMCSA to *respond* to his Request for Administrative Review, but instead an order directing the agency to *grant* his request because the

agency's constructive denial was unlawful.  See Compl. at 8 ("Petitioner respectfully requests

the Court to order the Respondent to remove the violation from his Clearinghouse profile for

failure to meet the reporting requirements as stated herein."); see also SAI v. DHS, 149 F. Supp.

3d 99, 109 (D.D.C. 2015) ("It is one thing to seek to compel an agency to respond to an

administrative complaint within a reasonable time.  It is entirely another to seek to control what

that response says.  Under section 706(1) of the APA, a court may at times compel an agency 'to

take a *discrete* agency action that it is *required to take*,' but may not direct '*how* it shall act.'"

(quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004))).

    This interpretation of the complaint raises another question:  If the agency action

challenged here is not the FMCSA's unreasonable delay in responding to Bass's request, but

instead its constructive denial of the request, is that action final, as is required to make out an

APA claim?  Cf. Marcum v. Salazar, 694 F.3d 123, 128 (D.C. Cir. 2012) (explaining that finality

is "a prerequisite to most causes of action under the APA," although is "not jurisdictional").  A

constructive denial may constitute final agency action if it meets the familiar test—i.e., if the

action (1) "marks the consummation of the agency's decisionmaking process" and (2) is "one by

which rights or obligations have been determined, or from which legal consequences will flow."

Friedman v. Fed. Aviation Admin., 841 F.3d 537, 541 (D.C. Cir. 2016) (quoting Bennett v.

Spear, 520 U.S. 154, 177–78 (1997)).  According to Friedman, "[w]here an agency has clearly

communicated it will not reach a determination on a petitioner's submission due to petitioner's

recalcitrance but simultaneously refuses to deny the petitioner's submission on those grounds, it

has engaged in final agency action[.]"  Id. at 542.

    This case aligns with Friedman in some respects.  Bass insists that he can correct the

alleged error on his profile through a particular amendment process and that the FMCSA has

refused to act on that request in any definitive way, thereby "plac[ing] [Bass] in a holding pattern" that "prevent[s] him from obtaining any explicitly final determination on his application." Id. Furthermore, the agency's non-response arguably "thwart[s] the Court's interest in reviewing those agency actions that, in practical effect if not formal acknowledgement," satisfying the two-part Bennett v. Spear test. Id. At the same time, there is no indication from the complaint that FMCSA "clearly communicated it will not reach a determination" on Bass's submission due to his "recalcitrance." Id. Adding to the haziness, the parties did not address this point in their briefing.

In any case, the Court need not resolve the finality issue because there is a more fundamental problem that necessitates dismissal: Bass should have sued under the Privacy Act, not the APA, and because the Privacy Act furnishes an "adequate remedy" here, see 5 U.S.C. § 704, his APA claim is precluded.

### a. The Availability of a Remedy Under the Privacy Act

In 2012, as part of a comprehensive transportation funding bill, Congress mandated the creation of a national clearinghouse for records relating to drug and alcohol testing of commercial motor vehicle operators. See generally 49 U.S.C. § 31306a. Under that statute, FMCSA has an obligation to ensure that the information on the database is accurate, id. §§ 31306a(g)(3), (g)(5), and that any release of information "compl[ies] with applicable Federal privacy laws, including the fair information practices under the Privacy Act of 1974," id. § 31306a(d)(1). FMCSA must "establish a process for an individual to request and receive information from the clearinghouse" to verify its accuracy and update the database as necessary. Id. § 31306a(j)(1). The statute further directs the agency to "establish a procedure, including an

appeal process, for an individual to dispute and remedy an administrative error in the individual's record."  Id. § 31306a(j)(2).

Pursuant to these statutory requirements, FMCSA has delineated two processes by which a driver may correct his Clearinghouse record, depending on the type of error.  See Def.'s Mot. to Dismiss at 9–10.  A driver may request that the agency correct "administrative errors," such as "errors in data entry" or a "duplicate report of a positive test result," through a process laid out in 49 C.F.R. § 382.717.  Aggrieved drivers are generally prohibited from contesting "the accuracy of test results, test refusals, or other violation information, under this section."  Id. § 382.717(1).  But there are three narrow exceptions, including one that allows a driver to "request that FMCSA remove from the Clearinghouse an employer's report of a violation under 49 CFR §§ 40.261(a)(1) or 40.191(a)(1) if that report does not comply with the reporting requirements in § 382.705(b)(3)."  49 C.F.R. § 382.717(a)(2)(iii).  More on that in a bit.

To challenge the *substance* of a logged violation, an aggrieved driver must travel a different route and file a request for amendment under the Privacy Act, 5 U.S.C. § 552a, in accordance with FMCSA's Privacy Act regulations.  See generally 49 U.S.C. § 31306a(d)(1) (mandating that any "release of information from the clearinghouse shall . . . comply with . . . the Privacy Act of 1974"); see also generally 49 C.F.R. Part 10, Subparts E and F (FMCSA's regulations implementing the requirements of the Privacy Act).  The agency's regulations explain that "[a]ny person who desires to have a record pertaining to that person corrected shall submit a written request detailing the correction and the reasons the record should be so corrected" and that the request should be "submitted" to the relevant "System Manager."  49 C.F.R. § 10.41.  FMCSA must acknowledge the receipt of such a request within ten days and either "promptly" make the change or, if it determines that a correction is not warranted, inform

the individual of his right to appeal.  Id. §§ 10.43, 10.45.  The regulations also spell out the

appeals process for a Privacy Act records amendment request, which requires the requester to

submit an application for review "includ[ing] all information and arguments relied upon within

30 days of the date of the initial denial," with "exceptions . . . permitted for good reason."  Id. §

10.51(c).  Such an application "must indicate that it is an appeal from a denial of a request made

under the Privacy Act," specifically.  Id. § 10.51(e).  The agency's determination as to the appeal

is "administratively final" when the Privacy Act Administrator or General Counsel (or their

delegee) informs the petitioner in writing of the final denial and advises the petitioner of his right

to sue in federal district court.  Id. § 10.51(b)(2).

　　　　Plainly, Bass does not seek to correct a clerical error; he wishes to have a recorded

violation removed from his profile.  Even he seems to recognize that the process laid out in §

382.717 of the FMCSA regulations is unavailable to him unless he invokes the (a)(2)(iii)

exception mentioned above.  See Pl.'s Opp. to Mot. to Dismiss at 4.

　　　　The problem for Bass is that the exception does not apply.  An individual may only

circumvent the substantive Privacy Act amendment process and proceed under §

382.717(a)(2)(iii) when he seeks to correct "an employer's report of a violation under *49 CFR §§

40.261(a)(1) or 40.191(a)(1)*" and when "that report does not comply with the [applicable]

reporting requirements" (emphasis added).  Following the cross-reference, the two identified

regulatory provisions trigger a violation only when a driver "fail[s] to appear" for any drug or

alcohol test, other than a pre-employment test, "after being directed to do so by the employer."

49 C.F.R. §§ 40.261(a)(1), 40.191(a)(1).  According to LTi, Bass violated FMCSA's drug testing

regulations not by failing to appear for his test, but by leaving the site before testing was

complete.  See Pl.'s Surreply, ECF No. 21, Ex. 1 at 1 ("DONOR PROVIDED A BRIGHT

14

YELLOW URINE SPECIMEN, THAT DID NOT HAVE A URINE SMELL, THEN THEY

REFUSED THE RECOLLECTION & WALKED OUT.").  As reflected on the Clearinghouse,

Bass violated subsection 40.261(a)(2), not subsection 40.261(a)(1).[4]  And a purported violation

of the former does not trigger an exception to Privacy Act review.

The upshot is that Bass ought to have pursued the alternative route for record

correction—that is, the Privacy Act path.  To be sure, there appear to be few meaningful

differences between the process for correcting an administrative error under 49 C.F.R. § 382.717

and a substantive error under 49 C.F.R. Part 10, Subparts E and F.[5]  Yet the Court is not at

liberty to ignore the agency's differentiated conduits for relief, especially when the Privacy Act

expressly authorizes "each agency that maintains a system of records" to "promulgate rules . . .

establish[ing] procedures for reviewing" record-amendment requests.  5 U.S.C. § 552a(f)(4).

---

[4] Bass contends that, because the collector gave him permission to leave the testing site once the initial sample was provided, the erroneous violation should be understood as a failure to appear at the testing site, not the failure to stay at the site until the testing process was complete. Pl.'s Opp. Br. at 3.  Even fully crediting Bass's recitation of the facts, as the Court must at the motion-to-dismiss stage, his argument is unavailing because it is directly contradicted by the copy of the Clearinghouse profile that he appended to his surreply.  See Pl.'s Surreply, ECF No. 21, Ex. 1 at 1.  And Bass's effort to recharacterize his conduct as a failure to appear, rather than a failure to complete testing, is a legal conclusion that the Court need not accept.

[5] Both processes require aggrieved drivers to submit a written statement explaining the basis for the requested correction.  Compare 49 C.F.R. § 382.717(b) with 49 C.F.R. § 10.41. And both lay out a process by which drivers may seek administrative review of an adverse determination.  Compare 49 C.F.R. § 382.717(f) with 49 C.F.R. §§ 10.43, 10.45, 10.51.  Aside from a driver's obligation to correctly label his request as either a "Petition for Review" or a Privacy Act request, see 49 C.F.R. §§ 382.717(c), 10.51(e), the only other key procedural difference between the two paths is that FMCSA must respond to petitions for the correction of administrative errors within 45 days of receipt, see 49 C.F.R. § 382.717(d), whereas there appears to be no particular turnaround time for an initial Privacy Act determination, see 49 C.F.R. § 10.43.

b.  <u>The Adequacy of the Privacy Act Remedy</u>

That still leaves the question whether the availability of a Privacy Act remedy forecloses Bass's APA claim.  Final agency action is subject to review under the APA only when "there is no other adequate remedy in a court."  5 U.S.C. § 704.  "When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies."  <u>Bowen v. Massachusetts</u>, 487 U.S. 879, 903 (1988).  Congress therefore included the "adequate remedy" provision of § 704 in order to "avoid such duplication."  <u>Id.</u>  But this "exception" to judicial review under the APA was not designed to be overly "restrictive."  <u>Id.</u> at 904.  As the D.C. Circuit has cautioned, "[c]ourts must . . . avoid lightly 'constru[ing] [section 704] to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action.'"  <u>Citizens for Resp. & Ethics in Washington v. DOJ</u>, 846 F.3d 1235, 1245 (D.C. Cir. 2017) (quoting <u>Bowen</u>, 487 U.S. at 903) ("<u>CREW</u>").[6]

Courts in this District have recognized that the availability of a Privacy Act claim may preclude an APA claim under the "adequate remedy" provision of § 704.  <u>See, e.g.</u>, <u>Harrison v. BOP</u>, 248 F. Supp. 3d 172, 182 (D.D.C. 2017); <u>Westcott v. McHugh</u>, 39 F. Supp. 3d 21, 33 (D.D.C. 2014); <u>Wilson v. McHugh</u>, 842 F. Supp 2d 310, 320 (D.D.C. 2012); <u>Tripp v. DOD</u>, 193 F. Supp 2d 229, 238 (D.D.C. 2002); <u>but see</u> <u>Radack v. DOJ</u>, 402 F. Supp. 2d 99, 104 (D.D.C. 2005) (holding that Privacy Act does not preclude APA claim where plaintiff sought different relief than the Act could provide and where the "APA claim center[ed] on [agency's] violation of its own internal policies," rather than improper disclosure made unlawful under the Act).

---

[6] The "adequate remedy bar of § 704" is not jurisdictional in nature, but instead "determine[s] whether there is a cause of action under the APA."  <u>Perry Capital LLC v. Mnuchin</u>, 864 F.3d 591, 621 (D.C. Cir. 2017).

Last year, however, the Supreme Court held in <u>Department of Agriculture Rural Development Rural Housing Services v. Kirtz</u>, 601 U.S. 42 (2024), that "the Privacy Act is 'complementary' to (<u>i.e.</u>, does not preclude a remedy) under the Fair Credit Reporting Act." <u>AFL-CIO v. DOL</u>, 778 F. Supp. 3d 56, 81 (D.D.C. 2025) (quoting <u>All. for Retired Ams. v. Bessent</u>, 770 F. Supp. 3d 79, 105 (D.D.C. 2025)).  Read alongside a less-recent passing remark by the Supreme Court about the interaction between the Privacy Act and the APA,[7] a few district courts have understood <u>Kirtz</u> to mean that the Privacy Act is not, in fact, "the kind of comprehensive and 'exclusive' remedial statute that impliedly displaces related remedies under other statutes." <u>All. for Retired Ams.</u>, 770 F. Supp. 3d at 105; <u>see also</u> <u>AFL-CIO</u>, 778 F. Supp. 3d at 81.  These courts have therefore suggested that "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA."  <u>All. for Retired Ams.</u>, 770 F. Supp. 3d at 105; <u>see also</u> <u>AFL-CIO</u>, 778 F. Supp. 3d at 81; <u>Ahmed v. Noem</u>, No. 25-cv-1351 (RBW), 2025 WL 2299447, at *15 (D.D.C. Aug. 8, 2025).

For its part, the D.C. Circuit has not decided whether the availability of an adequate Privacy Act claim categorically bars a plaintiff from bringing an APA claim—as it has, for example, with respect to the Privacy Act's sister statute, the Freedom of Information Act ("FOIA").  <u>CREW</u>, 846 F.3d at 1245–46 ("[W]e have little double that FOIA offers an 'adequate remedy' within the meaning of section 704, as it exhibits all of the indicators we have found to signify Congressional intent [to preclude an APA claim].").

---

[7] <u>See</u> <u>Doe v. Chao</u>, 540 U.S. 614, 619 n.1 (2004) ("The Privacy Act says nothing about standards of proof governing equitable relief . . . , although it may be that this inattention is explained by the general provisions for equitable relief within the [APA].").

The Court need not weigh in on whether the availability of a Privacy Act claim can categorically preclude an APA claim to conclude that Bass's APA claim, in particular, is barred. The adequate remedy analysis here "boils down to" whether "the APA's 'basic presumption of judicial review' has been overcome by 'a showing of clear and convincing evidence' that Congress wanted to preclude APA review of alleged Privacy Act violations of this type[.]" AFL-CIO, 778 F. Supp. 3d at 81 (citations omitted). "Several considerations guide [this] inquiry," including whether the Privacy Act has its "own independent cause of action" or "alternative review procedure"; "provide[s] at least 'the same genre' of relief as the APA"; or would create any "incompatibilities" with APA review. Virgin Islands Hous. Fin. Auth. v. FEMA, 151 F.4th 409, 418 (D.C. Cir. 2025); see also CREW, 846 F.3d at 1244–45.

All three factors militate in favor of preclusion here. To begin, the Privacy Act sets forth a process by which an individual may request that an agency "make any correction" to that individual's record that he "believes is not accurate, relevant timely, or complete[.]" 5 U.S.C. § 552a(d)(2)–(3). If the agency refuses, "the individual may bring a civil action against the agency" in district court after pursuing an administrative appeals process. Id. §§ 552a(d)(3), 552a(g)(1). The district court is authorized to "determine the matter de novo" and, if warranted, "order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct." Id. § 552a(g)(2)(A). The Act thus creates an "independent cause of action" based on an agency's failure to amend an individual's government record.

Next, the Privacy Act not only "provide[s] at least 'the same genre' of relief as the APA"—it offers *exactly* the injunctive relief that Bass seeks, *i.e.*, the correction of an alleged error on his Clearinghouse profile. Cf. Hum. Soc. Int'l v. U.S. Fish and Wildlife Svc., 394 F. Supp. 3d 67, 79 (D.D.C. 2019) (finding that FOIA precluded the plaintiff's APA claim to

18

"invalidate" agency actions in response to his document requests because the relief it sought was "precisely the relief available . . . under FOIA").

The third factor is slightly less clear, as it is not self-evident that APA review is structurally "incompatible" with Privacy Act review. Yet in Bass's case, letting his APA claim survive would, in effect, allow him to circumvent the Privacy Act's straightforward procedural requirements, along with those established in FMCSA's detailed regulations.

These considerations—in particular, the second—reassure the Court that Congress intended the Privacy Act to preclude an APA claim in a case like Bass's. This is not a case like AFL-CIO or Ahmed, in which plaintiffs sought relief that was unavailable under the Privacy Act. Nor is it a case like Radack, where among other things, the plaintiff challenged as arbitrary and capricious an agency's violation of its internal policies. Rather, Bass wants exactly what the Act provides for—the correction of his government record—making this a heartland Privacy Act claim. Cf. Henke v. U.S. Dep't of Comm., 83 F.3d 1453, 1456–57 (D.C. Cir. 1996) (The Privacy Act is designed "to allow individuals on whom information is being compiled and retrieved the opportunity to review the information and request that the agency correct any inaccuracies."); Bartel v. Fed. Aviation Admin., 725 F.2d 1403, 1407 (D.C. Cir. 1984) (The Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used."); see also Bain v. Office of Att'y Gen., 648 F. Supp. 3d 19, 39–40 (D.D.C. 2022) (The Act "grants individuals a variety of rights related to records maintained by government agencies about them.").[8]

---

[8] The Court is careful to note the relatively narrow contours of its ruling. This Opinion should not be read to foreclose, say, an APA challenge to an adverse agency adjudication that

To sum up: Bass has an adequate alternative remedy in the form of a Privacy Act claim, and his suggestion that he was "not . . . required" to pursue relief through the Act and its implementing regulations, see Pl.'s Opp. to Mot. to Dismiss at 5–6, misses the mark. As a result, his APA claim is barred.

### 2. Administrative Exhaustion

As Bass brought this case under the auspices of the APA, see Compl. ¶ 1 ("This action is brought pursuant to 5 U.S.C.A. § 702, § 704, § 706."), the Court could end its analysis there. However, in his opposition to FMCSA's motion to dismiss, Bass asserts that "his original petition to remove the [alleged error from the Clearinghouse] complies with 49 C.F.R. § 10.41 as the FMCSA is directly responsible for maintaining the Drug and Alcohol Clearinghouse and for that reason qualifies as the Clearinghouse's System Manager under 5 U.S.C. 552a (a)(1), (5), (B)(9) and (e)(1)." Pl.'s Opp. to Mot. to Dismiss at 6 (emphasis removed). In so positing, Bass could be heard to suggest that his record-amendment request was valid not only under § 382.717, but also under the Privacy Act and FMCSA's implementing regulations.

As explained above, the Court must construe a *pro se* complaint liberally and "in light of all filings, including filings responsive to a motion to dismiss." Brown v. Whole Foods Mkt. Group, Inc., 789 F.3d 146, 151–52 (D.C. Cir. 2015). To the extent that some portion of Bass's opposition brief could be understood as asserting a Privacy Act claim, the Court will take the opportunity to explain why Bass's case must be dismissed nonetheless.

---

has the incidental effect of creating an arguably inaccurate government record. All else equal, such an injury would seem to be quintessentially actionable under the APA. But that is not *this* case, where Bass's core grievance is that a third party has uploaded allegedly erroneous information onto a government database, and the principal relief he seeks is a correction to that database and not to some underlying agency decision. In short, a claim's mere implication of the accuracy of a government record does not banish the APA from the conversation.

Privacy Act record-amendment claims are subject to an administrative exhaustion requirement, meaning that "[e]xhaustion of [] administrative remedies is a prerequisite to bringing civil suit to compel amendment." Nagel v. U.S. Dep't of Health, Educ. & Welfare, 725 F.2d 1438, 1441 (D.C. Cir. 1984). Many courts in this District have understood the Privacy Act's exhaustion requirement to be jurisdictional in nature. See, e.g., Page v. Comey, 628 F. Supp. 3d 103, 136 (D.D.C. 2022), aff'd, 137 F.4th 806 (D.C. Cir. 2025); Barouch v. Dep't of Justice, 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (collecting cases); Sandoval v. Dep't of Just., 296 F. Supp. 3d 1, 13 (D.D.C. 2017) (same). Some courts have concluded otherwise. See, e.g., Bain, 648 F. Supp. 3d at 41–42 (explaining that the D.C. Circuit has "never gone [so] far" as to hold that Privacy Act exhaustion is a jurisdictional requirement and that "[d]eclining to dub" it so "makes sense in light of the language" and context of the Act's record-amendment provision).

Whether exhaustion under the Privacy Act is a jurisdictional requirement or instead "an element of the . . . record-amendment cause of action," id. at 42, Bass has not exhausted here, so no Privacy Act claim can lie. His initial correction request was submitted pursuant to 49 C.F.R. § 382.717(a)(1), and his Request for Administrative Review was filed pursuant to § 382.717(f)(1). Neither mentioned the Privacy Act by name, as seems to be an emphatic requirement under FMCSA's regulations. See 49 C.F.R. § 10.51(e). The failure to adhere to an agency's Privacy Act regulations generally necessitates dismissal for failure to exhaust. See, e.g., Blazy v. Tenet, 979 F. Supp. 10, 19 (D.D.C. 1997) (dismissing a Privacy Act claim for failure to exhaust when the plaintiff had not followed agency regulations for how to submit a Privacy Act request, sent a letter requesting documents to the wrong individual, and "nowhere mention[ed] the Privacy Act"), aff'd, No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1998) (per curiam); see also Bain, 648 F. Supp. 3d at 42–43.

Bass asserts that, because he was incarcerated at the time he submitted his correction requests, he did not have internet access sufficient to submit his requests through a system called DataQs, insinuating that his ability to pursue his correction claim was therefore limited.  See Pl.'s Opp. to Mot. to Dismiss at 5–6.  But a Privacy Act request to FMCSA must be made in writing and submitted to the "Systems Manager," see 49 C.F.R. § 10.41, or alternatively may be filed by email, see FMCSA Drug & Alcohol Clearinghouse, Requests for Record Correction Under the Privacy Act, https://clearinghouse.fmcsa.dot.gov/Resource/Index/PA-Record-Correction-Requests [https://perma.cc/F555-JRW7] (last visited 11/18/2025).[9]  The former does not require internet access, and neither involves the DataQs system.  Moreover, if the Privacy Act exhaustion requirement is indeed jurisdictional, Bass cannot be understood to have "constructively" exhausted his administrative remedies just because FMCSA never responded to his Request for Administrative Review.  See, e.g., Kearns v. Fed. Aviation Admin., 312 F. Supp. 3d 97, 107 (D.D.C. 2018); Barouch, 962 F. Supp. 2d at 67–68.

In conclusion, even if Bass's complaint and successive filings could be construed to include a Privacy Act claim, the claim is not viable because Bass has not exhausted his administrative remedies.

## IV.    Conclusion

For more than two years, Bass has been trying to correct an alleged error on his Drug & Alcohol Clearinghouse profile.  Unfortunately, he has been chasing the wrong rabbit—first by submitting correction requests pursuant to an inapplicable agency regulation meant for the correction of clerical errors and then by filing an APA claim in this Court.  As a result, the Court

---

[9] The Court may take judicial notice of information from official public websites of government agencies.  See Cannon v. DC, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013).

will **GRANT** FMCSA's motion to dismiss for failure to state a claim (or, in the alternative, for failure to exhaust administrative remedies under the Privacy Act).

At this juncture, Bass is free to submit a Privacy Act request through the appropriate regulatory channel; appeal any adverse determination through the agency's internal processes; and seek judicial review of the denial of his request, if one results.[10] If Bass refiles his request in the appropriate form, the Court encourages FMCSA to make a determination with some haste, given the lengthy delay Bass has already experienced. The Court is careful to note that this Opinion does not pass on the underlying merits of Bass's record-amendment claim or any of the procedural irregularities that Bass raises in his complaint; it leaves the meat and potatoes to the agency to chew on in the first instance.

A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: December 22, 2025

_____

[10] On the record before it, the Court sees no procedural impediment to Bass resubmitting his records correction request pursuant to the agency's Privacy Act regulations. To the extent the agency believes that he has run of out of time to seek a correction, equitable tolling or a comparable "good cause"-type principle would seem to excuse the delay, especially given that he has prosecuted his case diligently in this court.